UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| In re: | CASE NO. 10-32093 |
| Pacific Avenue, LLC, et al.,[1] | CHAPTER 11 |
| Debtors. | Jointly Administered[2] |

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363, 1107(a)
AND 1108 FOR ORDER AUTHORIZING (A) MAINTENANCE OF EXISTING BANK
ACCOUNTS; (B) CONTINUED USE OF EXISTING BUSINESS FORMS; AND
(C) CONTINUED USE OF CASH MANAGEMENT SYSTEM**

Pacific Avenue, LLC ("Pacific Avenue"), and Pacific Avenue II, LLC ("Pacific Avenue II"), debtors and debtors-in-possession in the above-captioned case (the "Debtors" and "Debtors-in-Possession"), hereby present their *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a), 363, 1107(a), and 1108(a) for Order Authorizing (A) Maintenance of Existing Bank Accounts; (B) Continued Use of Existing Business Forms; and (C) Continued Use of Cash Management System* (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

**INTRODUCTION**

1. On July 22, 2010, (the "Petition Date"), the Debtors filed voluntary petitions in this Court seeking relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. No trustee, examiner or statutory committee has yet been appointed in these Chapter 11 cases.

---

[1] These jointly administered cases are those of the following debtors: Pacific Avenue, LLC and Pacific Avenue II, LLC, Case numbers 10-32093 and 10-32095, respectively.
[2] Contemporaneously with this Motion, the Debtors have filed a Motion for Joint Administration seeking to jointly administer the Debtors' cases with the case of Pacific Avenue, LLC serving as the lead case.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief sought herein are sections 105(a), 363, 1107(a), and 1108 of the Bankruptcy Code.

## THE DEBTORS' BUSINESS

5. Together, as tenants-in-common, the Debtors own and operate the EpiCentre, a mixed-use commercial development consisting of approximately 302,000 rentable square feet of office and retail/entertainment space, plus an underground parking deck, located at 210 E. Trade St. in the city block surrounded by the light rail line, Fourth Street, College Street, and Trade Street in uptown Charlotte, North Carolina (the "Property").[3] The Debtors have operated the EpiCentre jointly, as one venture, without regard to their separate ownership interests. The Debtors' primary source of revenue consists of rent collections from EpiCentre tenants. The Debtors also receive shared expense reimbursements from the Aloft Hotel, parking lot income, advertising income, and special events income.

## AUTHORITY TO MAINTAIN EXISTING BANK ACCOUNTS

6. The Bankruptcy Administrator has established operating guidelines for debtors that continue to operate their businesses in Chapter 11. These guidelines require Chapter 11 debtors to, among other things, close all existing prepetition bank accounts and open new postpetition bank accounts. This requirement is designed to provide a clear line of demarcation between pre-petition and post-petition transactions and operations and helps prevent any

---

[3] Pacific Avenue II, LLC owns a 88% undivided interest in the Property, and Pacific Avenue, LLC owns a 12% undivided interest.

2

inadvertent post-petition payment of pre-petition claims by, for example, preventing the debtors' banks from honoring checks drawn before the petition date.

7. Before the Petition Date, the Debtors, in the ordinary course of business, maintained numerous bank accounts (the "Bank Accounts"). The account names and account numbers for the Bank Accounts are listed on Exhibit A to this Motion.

8. The Debtors seek relief from the Bankruptcy Administrator's requirement that the pre-petition bank accounts be closed and that new post-petition bank accounts be opened. If enforced in this case, this requirement would cause significant disruption in the Debtors' business and would impair the Debtors' efforts to maximize the value of their estates' assets.

9. Maintenance and use of the Bank Accounts would greatly facilitate the Debtors' transition to post-petition operations. To avoid delays in payments to trade creditors and employees, and to ensure as smooth a transition to Chapter 11 as possible with minimal disruption to their business, the Debtors should be permitted to continue to maintain and use the Bank Accounts, and, if necessary, to open new accounts. If the pre-petition checks are honored, such will be without prejudice to the rights of any party in interest to seek the avoidance of the relevant transfer(s).

10. Courts have entered orders authorizing debtors to maintain their prepetition bank accounts. *See, e.g., In re Fruit of the Loom, Ltd.*, Case No. 99-4497 (PJW) (Bankr. D. Del.) (Order dated Dec. 29, 1999); *In re Safety Components International, Inc.*, No. 00-1644 (JJF) (D. Del.) (Order dated Apr. 10, 2000); *In re ICO Global Communications Services, Inc.*, Case No. 99-2933 (MFW) (Bankr. D. Del.) (Order dated Aug. 27, 1999); *In re USN Communications, Inc.*, Case No. 99-383 (PJW) (Bankr. D. Del.) (Order dated Feb. 22, 1999). 11. A similar waiver of the account-closing requirement is necessary here. The Debtor requests that the Bank Account

be deemed to be a debtor-in-possession account, and that the Court authorize its maintenance and continued use (in the same manner and with the same account numbers, styles, and document forms) as those employed during the prepetition period.

## AUTHORITY TO CONTINUE USE OF EXISTING BUSINESS FORMS AND CHECKS

12. To minimize expenses to its estate, the Debtors also request that they be authorized to continue to use all correspondence, business forms (including, but not limited to, letterhead, lease agreements, purchase orders, and invoices) and checks existing immediately before the Petition Date, without reference to their status as debtors.

13. Changing correspondence and business forms would be unnecessary, burdensome to the Debtors' estate, expensive, and disruptive to the Debtors' business operations. *See In re Gold-Standard Baking, Inc.*, 179 B.R. 98, 105-06 (Bankr. N.D. Ill. 1995) (holding that U.S. Trustee's requirement prohibiting issuance of checks without "debtor-in-possession" designation was unenforceable). For these reasons, the Debtors request that they be authorized to use existing business forms without being required to place the label "debtor-in-possession" on thos forms.

## AUTHORITY TO CONTINUE USE OF CASH MANAGEMENT SYSTEM

14. The Debtors use a centralized cash management system (the "Cash Management System") in connection with the day-to-day operations of their business, which is managed through an agreement with Lincoln-Harris, LLC ("Lincoln-Harris"). Because the EpiCentre is a complex property to operate, the Debtors contract with Lincoln-Harris, and that entity collects rents and reimbursements due from tenants and pays property expenses. To facilitate this process, Lincoln-Harris is a sigantory on certain of the Debtors' Bank Accounts as indicated on Exhibit A.

4

15. The Debtors hereby seek authority to continue using the current Cash Management System. In light of the nature of the Debtors' operations, a successful reorganization of the Debtors' business, as well as the preservation and enhancement of the Debtors' combined value as a going concern, may be jeopardized if there is substantial disruption in the Debtors' cash management procedures. Accordingly, it is essential that the Debtors be permitted to continue to use their exisitng Cash Management System in connection with Lincoln-Harris

16. Bankruptcy courts routinely grant Chapter 11 debtors authority to continue using existing cash management systems, treating requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). This is particularly true where, as here, a Chapter 11 case involves affiliated debtors with complex financial affairs.

17. Likewise, the Delaware Bankruptcy Court explained that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash. *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992) (examining validity of certain customer refund claims to funds maintained in Debtors' centralized cash management system), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit agreed, emphasizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061.

## NOTICE

18. Notice of this Motion has been given to (i) the top twenty holders of general unsecured claims against Pacific Avenue; (ii) the top twenty holders of general unsecured claims against Pacific Avenue II; (iii) the Office of the United States Bankruptcy Administrator for the Western District of North Carolina; (iv) counsel for Regions Bank, the administrator for the Debtors' bank group of secured creditors; and (v) secured creditors Preferred Parking Service, LLC and US Bank NA. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice need be given.

## NO PRIOR REQUEST

19. No previous motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order (a) authorizing the Debtor to maintain and continue using its existing (i) Bank Accounts, (ii) checks and other business forms without reference to the Debtors' status, and (iii) continued use of cash management system; and (b) granting the Debtor such other relief as is proper.

This the 22nd day of July, 2010.

**GRIER FURR & CRISP, PA**

_s/ Joseph W. Grier, III_
Joseph W. Grier, III (State Bar No. 7764)
A. Cotten Wright (State Bar No. 28162)
Anna S. Gorman (State Bar No. 20987)
101 North Tryon Street, Suite 1240
Charlotte, North Carolina 28246
Phone: 704.375.3720; Fax: 704.332.0215
jgrier@grierlaw.com
cwright@grierlaw.com
agorman@grierlaw.com

*Counsel for the Debtors*

# EXHIBIT A

Case 10-32093    Doc 4    Filed 07/22/10    Entered 07/22/10 10:21:07    Desc Main
Document    Page 7 of 8

# EXHIBIT A

# Bank Accounts

| Account Holder | Account Type | Bank | Account Number |
|---|---|---|---|
| Pacific Avenue, LLC | Checking / payroll & capital expenditures | Wachovia | xxxx5631 |
| Pacific Avenue, LLC (Lincoln Harris is authorized signatory) | Checking / operating account | Wachovia | xxxx6544 |
| Pacific Avenue, LLC (Lincoln Harris is authorized signatory) | Checking / escrow - Tenant security deposits | Wachovia | xxxx7996 |
| Pacific Avenue, LLC | Checking | Regions Bank | xxxx0395 |
| Pacific Avenue, LLC (Regions Bank has closed this account) | Checking / escrow | Regions Bank | xxxx0387 |
| Pacific Avenue, LLC | Checking | Regions Bank | |
| Pacific Avenue, II | Checking | Wachovia | xxxx9115 |