

FILED & JUDGMENT ENTERED
David E. Weich

Jul 26 2010

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| PACIFIC AVENUE, LLC[1], | ) | Case No. 10-32093 |
| | ) | |
| Debtor. | ) | |
| | ) | |

INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 363: (I) APPROVING
USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION;
(III) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF

THIS MATTER coming on before the Court for hearing on July 23, 2010 upon the Emergency Motion Of the Debtors For Authority To Use Cash Collateral Pursuant to Sections 361 And 363 Of The Bankruptcy Code ("Cash Collateral Motion") filed by Pacific Avenue, LLC and Pacific Avenue II, LLC (collectively, the "Debtors"). Upon review of the Cash Collateral Motion, the other pleadings in this case and the argument of counsel, the Court makes the following:

### FINDINGS OF FACT[2]

---

[1] The chapter 11 bankruptcy cases of the following debtors are being jointly administered: Pacific Avenue, LLC and Pacific Avenue II, LLC, case numbers 10-32093 and 10-32095, respectively.

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Federal Rule of Bankruptcy Procedure 7052.

A. <u>Filing of Voluntary Petitions</u>. On July 22, 2010 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition under the provisions of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the Western District of North Carolina.

B. <u>Jurisdiction</u>. The Court has jurisdiction over the Debtors' bankruptcy cases (the "<u>Cases</u>"), the parties and the Debtors' property pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Cash Collateral Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein include sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code and Rule 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure. Venue of the Cases in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. <u>No Committee</u>. No official committee of unsecured creditors has been appointed in these Cases pursuant to 11 U.S.C. § 1102.

D. <u>Notice</u>. The Debtors provided notice of the hearing on this matter, and the emergency relief requested in the Cash Collateral Motion, (i) by electronic mail on July __, 2010 to certain parties in interest, including the Bankruptcy Administrator and counsel to the Pre-Petition Lender (as defined below) and (ii) by first class mail to the Internal Revenue Service and the creditors included on the list filed under Federal Rule of Bankruptcy Procedure 1007(d). Under the circumstances, such notice of the Cash Collateral Motion, the relief requested therein and the hearing on this matter complied with Federal Rule of Bankruptcy Procedure 4001(b) and (d) and the Local Bankruptcy Rules for the Western District of North Carolina.

E. <u>The Property</u>. Each of the Debtors is a limited liability company organized and existing under the laws of the State of North Carolina. The Debtors' sole asset consists of an integrated mixed-use retail, office and entertainment complex known as the EpiCentre, located at

210 East Trade Street, Charlotte, Mecklenburg County, North Carolina (the "Property"). The Debtors are tenant-in-common owners of the Property. The Debtors have developed the Property and lease space in the Property to a variety of tenants. Since the Petition Date, the Debtors have managed their affairs and continued in possession of the Property pursuant to sections 1107 and 1108 of the Bankruptcy Code.

F.    The Pre-Petition Loans. Prior to the Petition Date, the Debtors and Regions Bank, a state banking association in its capacities as administrative agent and lender (including any successors and assigns, the "Pre-Petition Lender"), entered into, among other documents, the following loan and collateral documents: (i) that certain Construction Loan Agreement, dated as of May 12, 2005 (as the same has been amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement") pursuant to which Regions provided loans and advances (the "Loans") to the Debtors for the development of the Property in the aggregate principal amount of up to $90,000,000; (ii) that certain Second Amended and Restated Promissory Note, dated as of May 16, 2008 (as the same may have been amended, restated, supplemented or otherwise modified from time to time, the "Note"), in the original principal amount of $90,000,000; and (iii) that certain ISDA Master Agreement, dated as of July 27, 2006 between Pacific Avenue, LLC and the Pre-Petition Lender (the "Swap Agreement"). The Debtors' obligations under the Loan Agreement, the Note and the Swap Agreement are secured by the Pre-Petition Collateral (as defined below) as evidenced by the following documents:

> (a)    that certain Deed of Trust, Assignment of Rents and Leases and Security Agreement, dated as of May 12, 2005 and recorded on May 13, 2005, at Book 18734, Page 85 in the Mecklenburg County Register of Deeds office (the "Deed of Trust");

> (b)    that certain First Amendment and Confirmation of Deed of Trust, dated as of June 29, 2007 and recorded on July 5, 2007, at Book 22484, Page 804 in the Mecklenburg County Register of Deeds office (the "First Amendment to Deed of Trust");

CHAR1\1163228v5

(c) that certain Second Amendment and Confirmation of Deed of Trust, dated as of May 16, 2008 and recorded on May 21, 2008, at Book 23773, Page 223 in the Mecklenburg County Register of Deeds office (the "Second Amendment to Deed of Trust")(the Deed of Trust, as amended by the First Amendment to Deed of Trust and the Second Amendment to Deed of Trust, shall be referred to as the "Amended Deed of Trust");

(d) certain UCC-1 financing statements filed with (i) the North Carolina Secretary of State's office, including filing nos. 20050047711J, 2010001407M, and 20100041409B, and (ii) the Mecklenburg County Register of Deeds office, including filings made at Book 18734, Page, 125, Book 18735, Page 897, Book 25636, Page 377, and Book 25636, Page 368 (collectively, the "UCC Financings"; the Amended Deed of Trust and the UCC Financing Statements shall be referred to herein collectively as the "Collateral Documents").

In addition, Afshin G. Ghazi and George H. Cornelson, III executed separate Guaranty Agreements in favor of the Pre-Petition Lender, each dated May 12, 2005. The Loan Agreement, the Note, the Swap Agreement, and the Collateral Documents are collectively referred to hereinafter as the "Loan Documents." The Debtors' indebtedness and other obligations to the Pre-Petition Lender arising under the Loan Documents shall be collectively referred to as the "Obligations." The Pre-Petition Lender asserts that the aggregate amount of the Obligations owed by the Debtors under the Loan Documents is not less than $93,970,040.76, comprised of at least $87,833,900.76 in outstanding Loans and at least $6,136,140.00 in obligations under the Swap Agreement.

G.   The Pre-Petition Collateral. To secure the Obligations, the Debtors granted to the Pre-Petition Lender, pursuant to the Collateral Documents, first priority liens on, and security interests in, substantially all of the Debtors' respective assets, both tangible and intangible, real and personal (collectively, and as more particularly described in the Collateral Documents, the "Pre-Petition Collateral"). For the avoidance of doubt, the Pre-Petition Collateral includes all rents, incomes, profits and revenue and any other fees or sums payable to the Debtors which arise out of the ownership or operation of the Property, which such rents, incomes, profits, revenue,

fees and sums constitute "cash collateral" as that term is defined in section 363 of the Bankruptcy Code (collectively, the "Cash Collateral"). Substantially all of the value in the Debtors' respective assets derives from the real property and improvements at the Property, along with the Cash Collateral generated at the Property.

H. <u>Operating Budget</u>. The Debtors believe that the operating budget, attached as <u>Exhibit "A"</u> hereto (the "<u>Budget</u>"), is achievable and will allow the Debtors to operate in the Cases without the accrual of unpaid administrative expenses. The Pre-Petition Lender is relying upon the Debtors' compliance with the Budget in accordance with this Interim Order in determining to consent to the Debtors' use of Cash Collateral.

I. <u>Consensual Use of Cash Collateral</u>. The Pre-Petition Lender consents to the Debtors' use of Cash Collateral in the ordinary course of business in accordance with the Budget, subject to the express terms and conditions set forth in this Interim Order.

J. <u>Immediate Need; Good Cause</u>. The Debtors have sought authorization to use the Cash Collateral. The proposed use of Cash Collateral is necessary for the continued maintenance and operation of the Property, and the Debtors are unable to make favorable arrangements for such new credit other than under terms and conditions as specified in this Order. The Debtors have an immediate need to use the Cash Collateral to maintain, preserve and protect the Property.

K. <u>Best Interests; Good Faith</u>. Entry of this Order is in the best interest of the Debtors, their creditors and other parties in interest in these Cases. The Debtors, the Pre-Petition Lender and their respective officers, employees, and advisors have negotiated at arms' length and have acted in good faith in negotiating, consenting and agreeing to the Debtors' use of Cash Collateral as contemplated and provided by this Order. The terms and provisions are fair and reasonable under the circumstances and reflect Debtors' exercise of reasonable business judgment consistent with Debtors' fiduciary duties.

CHAR1\1163228v5

L.   No Control by Lender.  The Pre-Petition Lender is not in control of either of the Debtors or the operation of their business, and nothing in this Order shall in any way be construed or interpreted to impose or allow the imposition upon the Pre-Petition Lender, or any of its respective officers, directors, employees or agents, of any liability for any claims arising from the Debtors' prepetition or postpetition activities or any activities of any affiliates in the operation of their business, or in connection with their restructuring efforts.

In view of the foregoing, it **THEREFORE IS ORDERED, ADJUDGED AND DECREED** as follows:

1.   The paragraphs contained in the preamble of this Order are incorporated herein by reference.

2.   Core Proceeding.  This is a "core" proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(D), (G), and (M), among other provisions, and this Court has authority to enter this Order under, *inter alia*, sections 105, 361, 362, and 363 of the Bankruptcy Code.

3.   Disposition.  The relief requested in the Cash Collateral Motion with respect to the entry of this Interim Order is GRANTED on an interim basis, and any objections thereto that have not previously been withdrawn are hereby overruled.  Subject to the terms hereof, this Interim Order is valid immediately and is fully effective upon its entry.  The use of Cash Collateral authorized hereunder shall expire on August 31, 2010, unless this Court enters a further order approving the use of Cash Collateral on a final basis, in which event the use of Cash Collateral shall be as provided for in such further order.

4.   Authorization to Use Cash Collateral.  Notwithstanding any provision of the Bankruptcy Code or the Bankruptcy Rules to the contrary, this Order shall take effect immediately upon entry and the Debtors shall be and are hereby authorized to use Cash Collateral

pursuant to the terms and conditions of this Order, in accordance with the Budget, through 11:59 p.m. (Eastern Standard Time) on August 31, 2010 (the "Usage Period").

    5.    <u>Permitted Usage; Budget</u>. In no event shall the Debtors be authorized to use the Cash Collateral for any purposes or under any terms other than those set forth herein, in the Budget, or as consented to in writing by the Pre-Petition Lender or as may otherwise be approved by this Court following notice and hearing as may be required. Unless the Pre-Petition Lender shall otherwise agree in writing, the amount of Cash Collateral that Debtors may use on an accrual basis during the Usage Period shall not exceed (x) on a line item basis, 110% of any line item disbursement projected for such month in the Budget and (y) on a cumulative basis, 105% of the gross amount of the disbursements included for such month in the Budget. Except as otherwise provided in this Order or otherwise authorized by order of the Court, the Debtors shall only be authorized to use Cash Collateral for the actual and necessary expenses of operating the Debtors' business pursuant to the Budget, as set forth above, and for payment of Chapter 11 quarterly fees pursuant to 28 U.S.C. §1930(a)(6). Unless otherwise authorized expressly by separate order of the Court, after notice and hearing, the Debtors shall not use Cash Collateral for payment of any pre-petition indebtedness or obligations of, or pre-petition claims against, the Debtors. The Debtors shall not be permitted to make any payments or distributions of any kind, on account of any pre-petition claims or interests, to The Ghazi Company or any of its "affiliates" or "insiders" as such terms are defined in the Bankruptcy Code. Nor shall the Debtors be permitted to pay, without further order of the Court after notice and hearing, any fees, commissions, expenses or other amounts owing to entities affiliated with the Debtors for management or other services relating to the Property.

    6.    <u>Adequate Protection</u>. As adequate protection for the interest of the Pre-Petition Lender in the Pre-Petition Collateral (including Cash Collateral) for, and in an aggregate amount

CHAR1\1163228v5

equal to, the diminution in value of such interest from and after the Petition Date, calculated in accordance with section 506(a) of the Bankruptcy Code (the amount of which shall be determined after notice and hearing), whether or not resulting from the use, sale or lease by the Debtors of the applicable Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay under section 362 of the Bankruptcy Code or otherwise (collectively, "Diminution in Value"), the Pre-Petition Lender shall receive the following adequate protection:

  (a) *Replacement Liens*. The Pre-Petition Lender is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361 and 363(e) of the Bankruptcy Code, senior replacement liens upon (x) all property owned by the Debtors as of the Petition Date in which the Pre-Petition Lender does not hold a valid, enforceable, perfected and unavoidable lien or security interest and the proceeds therefrom, and (y) all property which becomes part of each of the Debtor's estates on or after the Petition Date and the proceeds therefrom (collectively (x) and (y) together being the "Replacement Collateral"; the adequate protection replacement liens granted, the "Replacement Liens"). For the avoidance of doubt, the Replacement Collateral to be provided on account of any Diminution in Value resulting from Debtor's use of Cash Collateral shall include (i) all property which would have constituted Pre-Petition Collateral but for the institution of the Cases and (ii) any cash or cash equivalents acquired by the Debtors on or after the Petition Date. The Replacement Liens shall be in addition to any liens in favor of the Pre-Petition Lender arising in respect of section 552(b) of the Bankruptcy Code. Notwithstanding the foregoing, for purposes of this Interim Order, the Replacement Liens shall not attach to any claims pursuant to sections 502(d), 544, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (the "Avoidance Claims") or any proceeds or property

recovered in connection with the successful prosecution or settlement of Avoidance Claims (the "Avoidance Proceeds").

(b) *Automatic Perfection of Replacement Liens.* The Replacement Liens granted under this Order shall be valid, perfected, and enforceable against the Replacement Collateral as of the Petition Date without further filing or recording of any document or instrument or the taking of any further actions. The Replacement Liens shall not be subject to dispute, avoidance or subordination, and shall not be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code. The Replacement Liens shall not hereafter be subordinated to or made *pari passu* with any other lien or security interest (other than liens against the Property as of the Petition Date which are valid, enforceable and unavoidable and otherwise senior in priority to the pre-petition liens of the Pre-Petition Lender) arising after the Petition Date, under section 364(d) of the Bankruptcy Code or otherwise, absent the consent of the Pre-Petition Lenders. Notwithstanding the automatic perfection of the Replacement Liens granted pursuant to this Order, the Pre-Petition Lender is hereby authorized, but not required, to file or record financing statements, trademark filings, mortgages, notices of lien and other similar instruments in any jurisdiction, or to take any other action they deem necessary or appropriate in order to validate or perfect such Replacement Liens. A certified copy of this Order may, in the discretion of the Pre-Petition Lender, be filed with or recorded in any filing or recording offices in addition to, or in lieu of, such financing statements, mortgages, notices of lien or other similar instruments, and all filing or recording offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

(c) *Adequate Protection Super-Priority Claims.* The Pre-Petition Lender is hereby granted an allowed super-priority administrative claims with priority over all claims, including, without limitation, administrative expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d) and 1114 of the Bankruptcy Code (collectively, the "Super-Priority Claims") as provided for in section 507(b) of the Bankruptcy Code, payable from and having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof. For the avoidance of doubt, the Pre-Petition Lender's Super-Priority Claims shall not prevent the Debtors from making payments to third parties of any line item disbursements listed in the Budget that actually accrued before the occurrence of a Termination Event (as defined below).

*(d)  Adequate Protection Payments.* As further adequate protection for the Debtors' use of the Cash Collateral and the other Pre-Petition Collateral, the Debtors shall pay on the 15th calendar day of each month, the interest accrued on the Loan for the preceding calendar month, calculated at the non-default rate under the Loan Agreement; provided, however, for purposes of this Interim Order, the payment due on August 15, 2010 shall be only for the period of July 22, 2010 through July 31, 2010.

(e) *Escrow of Taxes and Insurance.* As further adequate protection for the Pre-Petition Lender's interest in the Pre-Petition Collateral, the Debtors shall deposit into a separate interest-bearing escrow account, held by Grier, Furr & Crisp, P.A., funds equal in amount to the line items for real estate taxes ($39,167), property insurance ($9,167) and liability insurance ($333). The Debtors shall make such deposit on the first business day of each calendar month. No disbursements shall be made from the escrow account for any purpose other than paying the real estate taxes, property insurance and liability

CHAR1\1163228v5

insurance with respect to the Property, and the Debtors shall cause all such taxes and insurance to be paid on a timely basis.

7. <u>Access To Premises; Reporting; Accounting</u>. As additional adequate protection for the Pre-Petition Lender, the Debtors shall provide, subject to appropriate confidentiality restrictions (including without limitation the confidentiality provisions of the Loan Agreement): (i) the Pre-Petition Lender (including its officers, employees, professionals and agents) reasonable access to their facilities (including the Property), books, and records during their normal business hours and shall allow the Pre-Petition Lender (including its officers, employees, professionals and agents) to inspect and review such books and records and any property of the Debtors upon request during normal business hours, including without limitation those books and records maintained with respect to the Property by any third parties engaged by the Debtors; (ii) monthly financial statements and other monthly financial information requested by the Pre-Petition Lender in a form reasonably acceptable to the Pre-Petition Lender on or before the 25th calendar day following the end of the month to which the statement and information refers; (iii) monthly written accountings and reconciliations of all cash receipts received by or on behalf of the Debtors and their use and expenditure of all Cash Collateral during the preceding month, such accountings and reconciliations to be in form, substance and detail reasonably acceptable to the Pre-Petition Lender and delivered to the Pre-Petition Lender no later than the 25th calendar day after the end of the preceding calendar month; (iv) all information, documentation, and reports to the Pre-Petition Lender as to the Debtors' cash balances, rent rolls, and leasing activity as shall be reasonably requested by the Pre-Petition Lender on a monthly basis; and (v) comply with the reporting provisions as required by the Loan Documents.

8. <u>Waiver of Section 506(c) Claims</u>. In consideration of and as a condition to the Debtors' use of Cash Collateral, no costs or expenses of administration of the Cases incurred

during the Usage Period, whether or not it is converted to a case under Chapter 7, shall be charged against or recovered from or against any or all of the Pre-Petition Lender, the Pre-Petition Collateral, Cash Collateral or Replacement Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise. Notwithstanding any approval of or consent to the Budget, nothing in this Interim Order shall constitute or be deemed to constitute the consent by the Pre-Petition Lender to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Budget) against such party, its claims or its collateral under section 506(c) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

9.  Termination-Default. The Debtors' ability to use Cash Collateral during the Usage Period shall terminate immediately without any action by the Court two (2) business days after the Pre-Petition Lender provides counsel for the Debtors with written notice of the occurrence of any of the following events (each a "Termination Event"):

(a)  the expiration of the Usage Period;

(b)  any Debtor's failure to fully perform any of its obligations as provided in this Order;

(c)  the commencement of any action by the Debtors against the Pre-Petition Lender or its agents, advisors or employees to subordinate or avoid any liens or claims that arise in connection with the Loan Documents;

(d)  (1) either Case shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code, or (2) a trustee under Chapter 11 of the Bankruptcy Code, a responsible officer or an examiner with enlarged powers relating to the operation of either Debtor's business (powers beyond those set forth in section 1106(a)(3) and (4) of

the Bankruptcy Code) under section 1106 of the Bankruptcy Code shall be appointed or elected in either Case;

(e)   (1) the Debtors shall assert in any pleading filed in any court that any material provision of this Order is not valid and binding for any reason, or any material provision of this Order shall, for any reason, cease to be valid and binding without the prior written consent of the Pre-Petition Lender, which consent may be withheld in the Pre-Petition Lender's sole and absolute discretion; or

(f)   the Debtors shall fail to maintain and preserve the Pre-Petition Collateral and Replacement Collateral, or fail to maintain comprehensive public liability, fire, hazard or workers compensation insurance coverage, or fail to retain valid governmental permits, licenses and all other authorizations necessary to operate the Property, including without limitation any certificates of occupancy in relation to the Property.

10.   <u>Unauthorized Use</u>.  In the event that either Debtor shall use Cash Collateral for a purpose not authorized herein, the Pre-Petition Lender's liens and other security interests, including without limitation the Replacement Liens, shall automatically attach to any assets acquired with such Cash Collateral to the same extent and with the same priority as the pre-petition liens and security interests would have attached thereto.

11.   <u>Lender's Rights to Seek Additional Adequate Protection</u>.  The entry of this Order is without prejudice to the Pre-Petition Lender's right to object to the Debtors' use of Cash Collateral, except as otherwise expressly authorized herein and under the terms hereof, and request further or different adequate protection, to move for relief from the automatic stay, or to request any other relief in this case should circumstances warrant. The Debtors reserve their rights to oppose any such request for additional or further protection or relief.

12. <u>No Implied Waiver</u>. The failure, at any time or times hereafter, of the Pre-Petition Lender to require strict performance by the Debtors of any applicable provision of this Interim Order shall not waive, affect or diminish any right of the Pre-Petition Lender thereafter to demand strict compliance and performance therewith. No delay on the part of any party in the exercise of any right or remedy under this Interim Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of any party under this Interim Order shall be deemed to have been amended, modified, suspended or waived unless such amendment, modification, suspension or waiver is in writing and signed by the party against whom such amendment, modification, suspension or waiver is sought. This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Pre-Petition Lender may have to bring or be heard on any matter brought before this Court.

13. <u>Subsequent Reversal or Modification</u>. Based on the findings set forth in this Order and the reliance of the Pre-Petition Lender in good faith on the terms thereof, if any of the provisions of this Order are hereafter modified, vacated or stayed by an Order of this Court or another court, such stay, modification or vacation shall not affect the validity and enforceability of any lien, security interest, priority or any other rights, benefits or protections authorized by this Order for the benefit of the Pre-Petition Lender hereunder, and any use of Cash Collateral by the Debtors pursuant to this Order prior to the effective date of such modification, stay or vacation shall be governed in all respects by the original provisions of this Order. If any order shall be entered by the Court converting either of the Cases to a case under chapter 7 of the Bankruptcy Code, or dismissing or closing any of the Cases, such action will not affect the validity and enforceability of any lien, claim, superpriority or other protection authorized or created hereby in favor of the Pre-Petition Lender. Notwithstanding any such reversal, stay, modification, vacatur, conversion or dismissal, any lien, security interest, and superpriority claim

granted by the Debtors in accordance with this Interim Order prior to the date thereof shall be governed in all respects by the original provisions of this Interim Order.

14. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary. In determining to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order, the Pre-Petition Lender shall not be deemed to owe any fiduciary duty to the Debtors, or their respective creditors, or estates.

15. <u>Successors And Assigns</u>. The provisions of this Order shall be binding upon and inure to the benefit of the Pre-Petition Lender and the Debtors and their respective successors and assigns, including any trustee or other representative hereafter appointed in either of the Cases.

16. <u>No Lender Control of Debtors' Operations</u>. By accepting the Operating Budget submitted by the Debtors and by taking any other actions pursuant to this Order, the Pre-Petition Lender shall not be deemed (i) to be in control of the operations or any liquidation of the Debtors; or (ii) to be acting as a "responsible person" or an "owner or operator," as such terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar federal or state statute, with respect to the operation, management, or any liquidation of the Debtors.

17. <u>Final Hearing And Response Dates</u>.

    (a) *Final Hearing*. A Final Hearing (the "<u>Final Hearing</u>") in respect of this matter shall be held on **August 25, 2010 at 11:00 a.m.** The Debtors shall provide at least twenty (20) days prior notice of such hearing to (i) parties who have filed a request for service prior to such date, (ii) the Bankruptcy Administrator, (iii) the Internal Revenue Service, (iv) those entities or individuals included on Debtors' list of largest ten (10) unsecured creditors, (v) the City of Charlotte Tax Collector, (vi) the Mecklenburg

CHAR1\1163228v5

County Tax Department, (vii) the North Carolina Department of Revenue and (viii) counsel to the Pre-Petition Lender.

(b) *Responses*. Any objection or other responses to Debtors' Cash Collateral Motion or to this Order shall be served on the Debtors, the Pre-Petition Lender and the Bankruptcy Administrator, and filed with the Court so that it is actually filed and received by the Debtors, the Pre-Petition Lender and the Bankruptcy Administrator no later than three (3) business days prior to the above-scheduled time for the Final Hearing. The Final Hearing may be adjourned by announcement in open Court at the time of such hearing; provided, however, that the adjournment of the Final Hearing shall not extend or otherwise alter the above-stated time for filing and serving objections or other responses.

18. Service. The Debtors shall forthwith serve a copy of this Order on counsel for the Pre-Petition Lenders, its unsecured creditors, the Bankruptcy Administrator, the Internal Revenue Service, the City of Charlotte Tax Collector, the Mecklenburg County Tax Department, the North Carolina Department of Revenue and such parties which have filed notices of appearance in these Cases.

19. Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Order accordance to its terms.

This Order has been signed electronically. The Judge's signature and court's seal appear at the tope of the Order.                    United States Bankruptcy Court

CHAR1\1163228v5

CHAR1\1163228v5